**James Henry MAY,**

v.

**Sheriff NEWHART, et al.**

**Civ. A. No. 3:92CV238.**

United States District Court, E.D. Virginia, Richmond Division.

June 9, 1993.

---

James Henry May, pro se.

Conrad Moss Shumadine, Gary Alvin Bryant, Willcox & Savage, Norfolk, VA, for defendant (Unknown) Newhart, Sheriff.

Kathleen Anne Dooley, Asst. City Atty., Chesapeake, VA, for defendant City of Chesapeake.

Gary Alvin Bryant, Willcox & Savage, Norfolk, VA, for defendants Joseph Fajardo and Earl Foster.

## MEMORANDUM AND ORDER

RICHARD L. WILLIAMS, District Judge.

James Henry May, plaintiff, brings this *pro se* Section 1983 action *in forma pauperis* alleging he was deprived of adequate medical treatment while he was confined in the Chesapeake City Jail from June 15, 1991, through July 18, 1991. The matter is presently before the Court on motion of the City of Chesapeake to dismiss pursuant to Fed. R.Civ.P. 12(b)(6).

For purposes of this motion, it is accepted that two medics employed at the Chesapeake City Jail, defendants Fajardo and Foster, were deliberately indifferent to plaintiff's serious medical needs; that the City Sheriff was charged with the duty of operating the jail; and that he failed to provide adequate medical care for plaintiff from June 15, 1991 through July 18, 1991.

The City asserts that: 1) the operation of the Chesapeake Jail is a state function; 2) the official responsible for setting the policy in operating the jail is the sheriff; and 3) the sheriff is a constitutional officer employed by the state, not the city. Therefore, the City argues, since the City Council has not, does not, and cannot dictate how the Sheriff is to operate his jail, the City cannot be liable for any policy or custom adopted by him.

It is clear that:

> ... [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by it, lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Municipal liability may be imposed only by officials having final policymaking authority acting in their area of city business. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (plurality

opinion). Whether an official possesses authority to make final policy decisions sufficient to impose municipal liability is purely a matter of state law. *Id.* at 124–125, 108 S.Ct. at 924–925. Municipal liability for the actions of its sheriff in operating a jail must focus on the "entity operating the jail," not on whether the sheriff is employed by the state or the city. *Dotson v. Chester,* 937 F.2d 920, 926 (4th Cir.1991).[1]

In Virginia each city and county is required to erect and maintain a local jail.[2] Va.Code Ann. § 53.1–71 (1991).[3] *See also* Va.Code Ann. § 53.1–72 (1991): "The jail of each county and city shall be the jail of every court therein established by law." A city may be reimbursed by the state, within specified limits up to a maximum of one-half of the cost of construction or renovation of its local jail, if approved by the State Board of Corrections. Va.Code Ann. § 53.1–80 (1991). It may also receive financial assistance from the state for the operating costs of its jail. *See* Va.Code Ann. §§ 53.1–83.1–53.1–86 (1991). Nevertheless, it is the city which remains responsible for funding local jail operations. Va.Code Ann. § 53.1–88 (1991). Pursuant to Va.Code Ann. § 53.1–126 the City may require that all foods, provisions, clothing and medicines for prisoners in local jails be purchased by or through its purchasing agent. A city may enter into contracts with the United States for the confinement of federal prisoners in its local jail for whatever fees the city wishes to charge, provided the fee is not less than the actual cost of confinement. Va.Code Ann. § 53.1–90 (1991). The local sheriff must collect such fees on behalf

of the County. *Ibid.* The sheriff is required to pay the fees into the city treasury where they become funds of the city. Va.Code § 53.1–92 (1991). The sheriff must also collect reasonable costs, as determined by the city, for maintaining other county or state prisoners. Va.Code Ann. § 53.1–91 (1991). He must promptly pay the fees collected into the general treasury of the city. Va.Code Ann. § 53.1–92 (1991).

A local jail must be operated in conformity with minimum standards set by the State Board of Corrections (Board). Va.Code § 53.1–68 (1991). If the local jail does not conform to the standards, the Board may prohibit confinement of prisoners in it. Va. Code § 53.1–69 (1991). Enforcement of the Board's orders is by a suit in the appropriate Circuit Court in the name of the Commonwealth against the governing body "which maintains and operates" the jail and the officer in charge of the facility. Va.Code Ann. § 53.1–70 (1991). If it appears that a locality is not adequately operating the local jail, the Circuit Court may order the local governing body to remedy the deficiencies. *See* Va. Code Ann. § 53.1–71 (1991).

■ Once a county or city elects to operate a local, as opposed to a regional jail, then responsibility for day to day operations of the jail falls to the sheriff. The sheriff is required to "receive into the jail" all persons lawfully committed. Va.Code Ann. § 53.1–119 (1988). He is "the keeper of the local jail, and the legal custodian of those who are lawfully confined in it." *Watts v. Common-*

1. In *Dotson,* the Court analyzed Maryland law and concluded a County Sheriff, although a state officer, was also acting as the final policymaker for the County when he functioned as the official in charge of the Dorchester County jail. The opinion reveals Maryland law concerning the construction, maintenance and operation of local jails and the duties of sheriffs is substantially similar to the law of Virginia.

2. Exceptions exist when two or more political subdivisions construct a regional jail facility under Va.Code Ann. § 53.1–81 (1991) or operate a regional jail pursuant to Va.Code Ann. § 53.1–105 (1991). The City of Chesapeake does not assert it participates in the operation of a regional jail. All jails, whether regional or local, fall under the definition of a "local correctional facility." *See* Va.Code § 53.1–1 (1991). For simplic-

ity, the term "local jail" as used in this opinion means a local correctional facility operated by a single political subdivision of the Commonwealth.

3. 2 Va.Code § 53.1–71 (1991) provides:

When it shall appear to the circuit court of any county or city that there is no jail therein or that the jail of such county or city is insecure, out of repair or otherwise inadequate, it shall be the duty of such court to award a rule in the name of the Commonwealth against the governing body of the county or city to show cause why a writ of mandamus should not issue commanding the governing body to erect a jail for the county or city, or to cause the existing jail of such county or city to be made secure, put in good repair, or rendered otherwise adequate, as the case may be.

**1236**

*wealth,* 99 Va. 872, 876–877, 39 S.E. 706, 707 (1901). A sheriff maintains the sole discretion to hire and fire his deputies. Va.Code Ann. § 15.1–48 (1989), *see Jenkins v. Weatherholtz,* 909 F.2d 105 (4th Cir.1990). The base salaries of a sheriff and his deputies is fixed and paid by the Commonwealth. Va. Code Ann. § 14.1–79 (1989). Any county or city may supplement such salaries, out of local funds, to whatever extent it deems appropriate, however. Va.Code Ann. § 14.1–11.4. Sheriffs in Virginia are constitutional officers. Va. Const. Art VII, § 4. They are not appointed by the local governing bodies. Rather, they are elected officials directly responsible to the voters of the locality within which they hold office. Va.Code Ann. §§ 15.1–40.1 and 15.1–796 (1989).

■ Considering Virginia law as it relates to jails and sheriffs, three conclusions are inescapable. First, the operation of the Chesapeake City Jail is a function of the City of Chesapeake.[4] Second, the final policy-making decision maker in the operation of the jail is the sheriff of Chesapeake City. Third, when making policy decisions in operating the city jail the sheriff is directly responsible to the citizens of the City of Chesapeake.[5] Those citizens cannot now avoid corporate responsibility for his policies simply by claiming the sheriff is a state employee. *Dotson,* 937 F.2d at 932. In short, because the citizens of Chesapeake have delegated final policymaking decisions in operating the jail to the sheriff, the city may be liable for his policies where they violate constitutional standards.

The motion to dismiss will be DENIED.

And it is so ORDERED.

---

4. In *McCoy v. Chesapeake Correctional Center,* 788 F.Supp. 890 (E.D.Va.1992), the Court dismissed all claims against the "Chesapeake Correctional Center," because it was not a person amenable to suit under § 1983. The Court had no reason to examine the possibility of *municipal* liability and did not purport to do so. Therefore, the Court had no reason to examine state law in light of *Dotson v. Chester,* 937 F.2d 920 (4th Cir.1991). Thus, the statement in the opinion that "local jails [must] be considered arms of the state," 788 F.Supp. at 893 does not support a holding that the operation of the Chesapeake City Jail is not a function of the City of Chesapeake.

5. To a lesser degree, he may also be responsible for his actions to the City Council since that body exercises absolute discretion with respect to the supplemental salaries it pays the sheriff and his deputies.